IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOSHUA MONROE HARMAN, et al.,

        Plaintiffs,

v.                                                                CIVIL ACTION NO.   2:20-cv-00336

DANNY E. WEBB,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiffs' Motion for Attorney Fees. [ECF No. 114]. Defendant has responded [ECF No. 117], and Plaintiffs have replied [ECF No. 121]. For the reasons stated herein, the Motion is **GRANTED in part** and **DENIED in part**. The court **ORDERS** that Plaintiffs be awarded attorney's fees in the amount of $64,560.00, plus $2,750.44 in costs.

I.    Background

    A. *Principal Litigation*

On May 12, 2020, Plaintiffs Joshua and Jesse Harman commenced this litigation to recover damages stemming from alleged misrepresentations under the parties' Stock Purchase and Sale Agreement (the "Agreement"). [ECF No. 1]. Under the Agreement, Defendant Danny Webb sold to Plaintiffs the Danny Webb

Construction Company, Inc. (the "Company"), along with an injection well, four semi-tractor trucks, two tandems, and five tankers. *Id.* ¶¶ 6, 8, 19.

In their Complaint, Plaintiffs asserted claims for Breach of Contract (Count I); Fraud (Count II); and Express Indemnification and Hold Harmless (Count III). Plaintiffs alleged that Defendant misrepresented the condition of three discrete component parts of the Company: the vehicles, the injection well, and the containment area.

On May 17, 2021, Defendant moved for partial summary judgment. [ECF No. 56]. After filing responsive briefing, Plaintiffs conceded both issues raised in the motion. *See* [ECF No. 59 (voluntarily dismissing Fraud claim); ECF No. 60 (stipulating that prior oral representations could not form basis for Breach of Contract claim)].

A jury trial took place on August 9th and 10th, 2022. At the close of Plaintiffs' case, the court granted Defendant judgment as a matter of law with respect to the alleged misrepresentations regarding the containment area. *See* [ECF No. 107]. The jury was presented with the claim for Breach of Contract based on alleged misrepresentations, contained in the Agreement, as to the condition of the vehicles and the injection well. *See* [ECF No. 117, at 3]. The jury returned a verdict in favor of Plaintiffs as to the injection well, but found for Defendant with respect to the vehicles. Plaintiffs were awarded $70,725.31 in compensatory damages and $10,608.79 in interest. *Id.*

### B.  Motion for Attorney Fees

On the morning of August 9th, just before trial began, the court ruled that the Agreement "clearly and unambiguously provides for attorney fees arising out of either parties' breech [sic] or failure to perform under the contract." Transcript of Record at 4:5–11, *Harman v. Webb*, No. 2:20-cv-00336 (S.D. W. Va. Aug. 9, 2022). Consequently, on August 25, 2022, Plaintiffs moved for attorney fees in the amount of $109,745.50, plus $2,816.65 in costs, for a total of $112,562.15. [ECF No. 114, ¶ 13]. According to their Motion, Plaintiffs arrived at this figure by determining the total amount incurred to litigate this case ($150,270.00) and subtracting charges related to the issues on which Plaintiffs did not prevail ($40,524.50). *Id.* ¶¶ 7, 12. In response, Defendant did not contest that Plaintiffs are entitled to recover fees associated with their successful claims. But given that "Plaintiffs only enjoyed limited success," Defendant questioned Plaintiffs' calculations, emphasizing their "refus[al] to produce their attorneys' billing records." [ECF No. 117, at 5].

Shortly after responding to Plaintiffs' Motion, Defendant appealed. [ECF No. 118]. In reply, Plaintiffs supplied the relevant billing records but moved to file them under seal. [ECF Nos. 121, 122]. In arguing that the billing records should not be disclosed, Plaintiffs relied largely on the pending appeal and consequent potential for a new trial. *See* [ECF No. 121, at 4; ECF No. 122, at 1]. On January 10, 2023, the Fourth Circuit dismissed the appeal pursuant to the parties' stipulated motion to

voluntarily dismiss. [ECF No. 135]. Shortly thereafter, the parties notified this court that they intend to resume an appeal once the Motion for Attorney Fees is resolved.

On March 10, 2023, I denied Plaintiffs' Motion to Seal and directed them to file redacted billing records and a memorandum justifying the redactions. [ECF No. 137]. Pursuant to that Order, Plaintiffs submitted the billing records, unredacted, explaining that "Defendant disclosed that the scope of his appeal to the Fourth Circuit was limited to this Court's pretrial ruling that the contract permitted the recovery of attorney fees if Plaintiffs proved that Defendant breached the contract by misrepresenting the condition of the Company's injection well. Because Defendant is not appealing the jury's decision and not seeking a new trial, the details in the billing records no longer present a risk of prejudice to the Plaintiffs." [ECF No. 138, at 1]. In my March 10th Order [ECF No. 137], I also permitted Defendant to submit additional briefing on the fee issue, which he timely filed on March 24, 2023 [ECF No. 141].

## II.   Legal Standard

Courts evaluate attorney's fees under a reasonableness standard. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 243 (4th Cir. 2010). "The proper calculation of an attorney's fee award involves a three-step process." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). The court must first determine the "lodestar figure" by multiplying the number of reasonable hours expended by a reasonable hourly rate. *Id.* (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). At this step,

the court is guided by the so-called *Johnson* factors.[1] After determining the lodestar figure, the court "must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* (quoting *Robinson*, 560 F.3d at 244 (quotation marks omitted)). Finally, "the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the party." *Best Med. Int'l, Inc. v. Eckert & Ziegler Nuclitec GmbH*, 565 F. App'x 232, 237 (4th Cir. 2014) (internal markings omitted) (quoting *McAfee*, 738 F.3d at 88).

## III. Discussion

I have already ruled that the parties' Agreement provides for attorney fees to the prevailing party in the event of breach, and a jury found that Defendant breached the Agreement. Accordingly, Plaintiffs' Motion is **GRANTED** insofar as they are

---

[1] The twelve factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–96 (1989), have been characterized by the Fourth Circuit as follows:

(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88 n.5 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

The United States Supreme Court has criticized the *Johnson* factors as providing "very little actual guidance to district courts." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986). But the Fourth Circuit continues to require their consideration in conjunction with the lodestar approach. *See, e.g., Best Med. Int'l v. Eckert & Ziegler Nuclitec GmbH*, 505 F. App'x 281, 284 (4th Cir. 2013) ("[W]e remand for a further analysis that takes into account the applicable *Johnson* factors.").

5

entitled to an award of reasonable attorney fees incurred to litigate their successful claim. I must now determine what constitutes a reasonable fee award in this case.

Throughout their briefing on this issue, Plaintiffs continually updated their fee request to reflect the additional time spent on that briefing. *See* [ECF No. 121, at 6–7; ECF No. 138, at 1–2]. Plaintiffs now seek a total of $136,443.84 in fees and costs, and they have filed additional billing records to corroborate the amounts sought. [ECF No. 138].

### A. Lodestar Calculation

To calculate the lodestar figure, I must determine a reasonable hourly rate, as well as a reasonable number of hours expended on the litigation, viewed as a whole. In assessing reasonableness at this step, I consider the relevant *Johnson* factors.

#### i. Reasonable Hourly Rate

The fee applicant bears the burden of establishing the reasonableness of the requested rates. *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir. 2010). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Id.* (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). Examples of specific evidence that courts have found "sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.* (quoting *Robinson*, 560 F.3d at 245).

6

Plaintiffs filed attorney billing records primarily reflecting hours worked by lead counsel, a senior partner, at a rate of $500 per hour. *See* [ECF No. 138-1]. The records also contain several entries by paralegals, billed at $165 per hour, *e.g.*, *id.* at 25, 31, as well as a few entries by associates at $200 and $325 per hour, *e.g.*, *id.* at 35, 41. In support of these rates, Plaintiffs cite a handful of cases, predominantly from this district, in which the court awarded fees at somewhat similar rates. *See* [ECF No. 115, at 9–12]. Plaintiffs also submitted an affidavit by lead counsel, William R. Slicer, attesting that $500 is his "current highest hourly rate," which he has charged "on some matters since October 2018." [ECF No. 116, ¶ 19]. For perspective, Mr. Slicer also stated that he charges $425 per hour on "other matters involving less complicated issues where [he is] serving as local counsel." *Id.*

In response, Defendant argued that the cases cited by Plaintiffs are largely inapposite, and that Mr. Slicer's affidavit fails to establish $500 as a reasonable hourly rate. [ECF No. 117]. Plaintiffs thereafter supplied two additional affidavits from attorneys at other local law firms who attest to commonly charging $500 or more per hour, as well as invoices from two local mediators showing their hourly rates of $500 and $600. [ECF No. 121]. I will now assess the evidence put forth by Plaintiffs, giving consideration to several *Johnson* factors "particularly relevant to the court's determination of reasonable hourly rates." *Wolfe v. Green*, No. 2:08-01023, 2010 WL 3809857, at *5 (S.D. W. Va. Sept. 24, 2010).

First, Plaintiffs have provided affidavits and invoices suggesting their proposed rate is a "customary fee for similar work in the community." *Johnson*, 488 F.2d at 718; *see* [ECF Nos. 121-1, 121-2, 121-3, 121-4, 121-5]. The affiants—both partners at West Virginia law firms and experienced in commercial litigation—each attest to the reasonableness of $500 as the hourly rate charged by "experienced business lawyers" like Mr. Slicer. [ECF No. 121-2, ¶ 10]; *see* [ECF No. 121-1]. One affiant states that he and other senior partners in his office "regularly charge in excess of $500/hour for complex business litigation matters in West Virginia," and he expressly endorses Mr. Slicer as a "highly skilled attorney." [ECF No. 121-1, ¶¶ 7, 9–10]. The other affiant, however, offers more restrained remarks; he describes a rate of $500 per hour or more as "not uncommon" but does not go so far as to say the rate is in fact common or prevailing, nor does he ever attest to charging that amount himself. [ECF No. 121-2, ¶ 10]; *see generally Koontz v. Wells Fargo N.A.*, No. 2:10-cv-00864, 2013 WL 1337260, at *15 (S.D. W. Va. Mar. 29, 2013) (noting with disapproval that "[a]ll of the peer affidavits contain identical, conclusory, and mechanistic catch-phrases that the requested hourly rates are reasonable and 'within the range of hourly rates charged for attorneys of their experience and background in this community'"). Furthermore, the invoices submitted by Plaintiffs are of attenuated relevance. *See* [ECF Nos. 121-3, 121-4, 121-5]. Although attorneys may require similar skills for mediation, they provide a very different service when representing clients in litigation, even when the mediation involves identical subject

matter—and here, nothing in the record indicates the subject matters of the mediations referenced. In his own affidavit, Mr. Slicer explains that he "do[es] not have a 'standard' hourly rate," and that $500 is his "current highest hourly rate," but he does note his prior representation of Plaintiffs on similar matters at the same rate. [ECF No. 116, ¶¶ 7, 19, 20]; *see also Johnson*, 488 F.2d at 719 (holding that courts may appropriately consider the "nature and length of the professional relationship with the client" when determining the fee that would be reasonable). Additionally, although Plaintiffs have the burden of proof, Defendant offers no evidence to contradict the reasonableness of the proposed rate, and instead only points to some weaknesses in Plaintiffs' evidence. *See* [ECF No. 117, at 9–10; ECF No. 121, at 2; ECF No. 141].

Plaintiffs further rely on "awards made in similar litigation" to support the reasonableness of the requested hourly rate of $500. *Johnson*, 488 F.2d at 719. As Defendant observes, many of these cases do not represent "similar litigation" to the case at bar. *See* [ECF No. 117, at 9 (distinguishing cases involving contingent fee arrangements and class actions)]. Nevertheless, the case law indicates this rate at least falls within the range of reasonable fees. *See, e.g.*, *McGee v. Cole*, 115 F. Supp. 3d 765, 775 (S.D. W. Va. 2015) (finding rate of $500 per hour "coincides with a highly competent, experienced senior litigator's rates and reflects the more limited role of [counsel] in this case"); *Jenkinson v. Highmark W. Va., Inc.*, No. 3:19-cv-83, 2020 WL 13548051, at *2 (N.D. W. Va. Apr. 24, 2020) ("Plaintiff's requested rate of $400 per

9

hour is reasonable under these circumstances."); *W. Va. Highlands Conservancy v. Lexington Coal Co., LLC*, No. 3:19-0573, 2022 WL 1414492, at *2 (S.D. W. Va. May 4, 2022) (awarding fees at $475 per hour where "Defendant did not respond to the Motion to contest the reasonableness of the hourly rates requested").[2] On balance, however, the cases indicate this rate to lie toward the top of that range. *See, e.g.*, *Cobranchi v. City of Parkersburg*, No. 2:18-cv-01198, 2022 WL 5250297, at *6 (S.D. W. Va. Oct. 6, 2022) (setting hourly rate at $375 for lead counsel who requested $400); *Constellium Rolled Prods. Ravenswood, LLC v. Rogers*, No. 2:15-cv-13438, 2017 WL 4445977, at *2–3 (S.D. W. Va. Oct. 5, 2017) (approving highest requested rate of $314.50 per hour); *Koontz*, 2013 WL 1337260, at *19 (S.D. W. Va. Mar. 29, 2013) (setting top hourly rate at $375 for "a preeminent consumer law attorney" who requested a rate of $425 per hour).

I next consider the "experience, reputation, and ability of the attorneys." *Johnson*, 488 F.2d at 718. Mr. Slicer has "over 33 years of experience as an attorney litigating cases in both state and federal court" and "hold[s] the highest peer review rating of AV from Martindale Hubbell." [ECF No. 116, ¶¶ 4, 6]; *see William R. Slicer*, Martindale,   https://www.martindale.com/attorney/william-r-slicer-1782704/   (last

---

[2] Plaintiffs appropriately note that fees awarded several years ago should be viewed with consideration for inflation. For example, in 2010, Judge Copenhaver approved an hourly rate of $325 where attorneys had requested $400 per hour. *Wolfe*, 2010 WL 3809857, at *7. Accounting for nearly thirteen years of inflation, those approved and requested rates equate to $447.60 and $550.89, respectively. *See CPI Inflation Calculator*, U.S. Bureau of Lab. Stat., https://www.bls.gov/data/inflation_calculator.htm (last visited Mar. 28, 2023) (enter dollar amount "325" or "400"; then select "September" and "2010" from dropdowns; then select "February" and "2023" from dropdowns; then click "Calculate").

visited Mar. 28, 2023). Through affidavits, other attorneys praise Mr. Slicer as "a highly skilled attorney who is involved in complex civil litigation," [ECF No. 121-1, ¶ 7], though neither endorsement is particularly specific. At trial, I commended counsel for both parties on their preparation and work before the court. *See* Transcript of Record at 4:20, 5:16–18, *Harman v. Webb*, No. 2:20-cv-00336 (thanking the parties for "sav[ing] me a lot of grief" and noting that "[i]t helps to have experienced lawyers"). Defendant does not appear to contest Mr. Slicer's skill and experience as an attorney. Notwithstanding Mr. Slicer's obvious aptitude, counsel committed some mistakes. But these mistakes were relatively isolated, and their impact will already be considered later in this analysis when examining the degree of success achieved. *Cf. Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (cautioning against accounting for the same consideration more than once).

Based on the foregoing, the court finds $500 to be a reasonable hourly rate for Mr. Slicer's services in this case. Mr. Slicer has significant litigation experience and a commensurate reputation in the community. He is an effective attorney, as demonstrated throughout his work on this matter. The affidavits and invoices submitted fall just short of establishing $500 as the "prevailing market rate" for comparable services, but case law shows that an hourly rate of $500 is within range of reasonable fees for a prominent and experienced attorney such as Mr. Slicer. A rate of $500 is also consistent with the inflation-adjusted awards in cases cited by Plaintiffs. *See* [ECF No. 121, at 3 (explaining that Judge Copenhaver's 2010 award

of $325 per hour, to an attorney with comparable experience to Mr. Slicer, "equates to $420 in 2022, based on income inflation calculators" (citing *Wolfe*, 2010 WL 3809857))].

Though Mr. Slicer performed most of the work and bills at the highest rate, Plaintiffs also seek fees for hours billed by paralegals (at $165 per hour) and associates (at $200 and $325 per hour).[3] Because Plaintiffs' briefing focused on establishing the reasonableness of their lead counsel's rate, the record is left with minimal evidence from which to determine reasonable hourly rates for all involved in the case. In his initial response to Plaintiffs' Motion, Defendant noted that "other than title and years of practice, Plaintiffs fail to elaborate on the 'skill, experience and reputation' of the associates" and others who worked on this matter, and Mr. Slicer's affidavit "failed to even state whether these are prevailing rates charged by those individuals or if other clients have paid similar rates." [ECF No. 117, at 10]. Plaintiffs had multiple opportunities to address these deficiencies and chose to rely solely on a handful of cases to support their requested rates. After reviewing the case law, and the limited information provided by Plaintiffs,[4] I find reasonable hourly

---

[3] The records also contain entries by "MD" billed at $375 per hour. *See, e.g.*, [ECF No. 138-1, at 67–68]. Plaintiffs do not address this lone discrepancy between the rates billed and those requested. Despite not having any information regarding MD, the court infers based on billing rates that MD's skills and experience are at least somewhat comparable to those of Anthony Nortz, the experienced associate who bills at $325 per hour. Accordingly, the court will group time entries by MD with those by AN, and those entries will be compensable at the same rate.

[4] I summarize that information here. Timur Dikec worked on the parol evidence rule, and at that time "had almost two years' experience as an associate attorney." [ECF No. 115, at 12 n.2]. "Anthony Nortz, at the time of his work on this case, had six years' experience as a lawyer, and his work involved responding to defendant's motions *in limine* and legal research regarding recovery of attorney's fees." *Id.* at 12 n.3. Aaron Scarr also worked on the attorney fees issue while "he was a rising third-year law student working as a summer associate and billed at a paralegal rate." *Id.* at 12 n.4. Michael Quinlan,

rates as follows: $150 for paralegals and law clerks, $300 for the most experienced associate, and $200 for other associates. *See, e.g.*, *Wolfe*, 2010 WL 3809857, at *6–8 (finding hourly rate of $130 reasonable for "a young lawyer of promising credentials," and awarding a rate of $100 per hour for paralegal work); *Cobranchi*, 2022 WL 5250297, at *6 (awarding hourly paralegal rate of $115 and approving unopposed request for associate rate of $250); *Koontz*, 2013 WL 1337260, at *18–19 (setting appropriate hourly rates for associates at $160 and $175, and for paralegals at $100); *McGee*, 115 F. Supp. 3d at 776 (setting rates for paralegals and associates at $100 and $250, respectively).

### ii.  *Reasonable Number of Hours*

"[I]t is the fee applicant's burden to establish the number of hours worked." *Wolfe*, 2010 WL 3809857, at *8. Plaintiffs have supplied detailed billing records, and counsel certifies their authenticity. *See* [ECF No. 138]; Fed. R. Civ. P. 11. The following chart details the hours billed, grouped by the reasonable billing rates determined above:

| Designation | Hourly Rate | Hours Billed | Total Fees |
|---|---|---|---|
| Senior Counsel | $500 | 313.4 | $156,700.00 |
| Associate | $300 | 10 | $3,000.00 |
| Associate | $200 | 7.4 | $1,480.00 |
| Paralegal/Law Clerk | $150 | 74 | $11,100.00 |
| **TOTAL** | | 404.8 | $172,280.00 |

---

also billed at a paralegal rate, is a recent law school graduate who was not yet licensed at the time of his work on this case, which involved the issue of the reasonable attorney's fees. *Id.* at 12 n.5. "Sarah Morris is a highly experienced paralegal with over 22 years' experience." *Id.* at 12 n.6.

The district court should also exclude hours that were not "'reasonably expended.' Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "At bottom, the number of hours must be reasonable and must represent the product of 'billing judgment.'" *Wolfe*, 2010 WL 3809857, at *8 (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)). Defendant objects to specific billing entries associated with unsuccessful claims—and these are discussed below—but he does not take issue with the overall reasonableness of counsel's performance. Likewise, I find that Plaintiffs' fee request reflects billing judgment. In his initial response, Defendant expressed concern over duplicated trial-preparation efforts necessitated by a continuance granted on Plaintiffs' motion. *See* [ECF No. 117, at 6]. But as a whole, the records demonstrate that counsel performed reasonably in light of the complexity of the case and the skill required to effectively represent Plaintiffs. *See Johnson*, 488 F.2d at 718. Plaintiffs also highlight their counsel's efforts to minimize costs, such as by "only involv[ing] one senior lawyer on the case," [ECF No. 115, at 8], while "Defendant had two lawyers representing him jointly during all phases of this litigation," both of whom are partners at their law firm, [ECF No. 121, at 2]. Plaintiffs additionally argue that Defendant rebuffed their good faith attempts to negotiate a settlement, however,

14

Defendant points out that "mediation concluded" because "Plaintiffs twice increased their demand." [ECF No. 117, at 3].

### B. Unsuccessful Claims

Plaintiffs in this case did not enjoy complete success. According to the Complaint, Plaintiffs initially sought "to recover damages in excess of $300,000." [ECF No. 1, ¶ 2]. Plaintiffs pursued two substantive claims—Fraud and Breach of Contract—to recover three categories of damages. They prevailed on one claim as to one category of damages—breach of contract regarding the injection well. The jury awarded them $70,725.31, plus interest. [ECF No. 128].

When determining a reasonable fee award, courts can account for the degree of success obtained in multiple ways. *See Best Med. Int'l*, 565 F. App'x at 237. The appropriate approach depends on "whether the claims on which the plaintiff prevailed are related to those on which he did not." *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998). Where the claims are unrelated, fees associated with those claims may be wholly excluded from the calculation. *See id.* But where the claims involve "a common core of facts," it is more difficult to divide the hours expended on a claim-by-claim basis. *Id.* (quoting *Hensley*, 461 U.S. 424 at 435). In this case, Plaintiffs' claims, though based on related legal theories, involved three discrete categories of damages, each predicated on different facts. Accordingly, at least some billing entries may be readily discarded as unrelated to Plaintiffs' successful claim, and Plaintiffs have done so already.

In determining the amount of fees to request, Plaintiffs "cut" billing entries "for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88. These cuts total 82 hours—80 performed by Mr. Slicer and 2 by paralegals. [ECF No. 138-1]. The court finds Plaintiffs' determinations to be reasonable overall. A few concerns are addressed in the discussion that follows.

Beyond Plaintiffs' cuts, Defendant identifies additional time entries as noncompensable. Defendant appears to take a more itemized approach when defining "unsuccessful claims," arguing that time spent pursuing any unsuccessful legal position should be excluded. *See, e.g.*, [ECF No. 141-1, at 1]. For example, Plaintiffs spent time opposing Defendant's partial summary judgment motion on issues they eventually conceded. Because the hours spent on that motion exclusively involved unsuccessful positions, Defendant argues for exclusion of that time. *Id.* Defendant similarly argues for deduction of fees associated with Plaintiffs' motion to seal their billing records, given that the court denied the motion and "Defendant attempted to resolve that exact issue in advance." *Id.* at 2. But the issues that Plaintiffs unsuccessfully raised still relate to their ultimately successful claims for Breach of Contract as to the injection well and for attorney's fees under the Agreement. Moreover, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in a lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461

U.S. at 435. Accordingly, these time entries should not be wholly excluded; Plaintiffs' limited degree of success across this litigation is more appropriately reflected at other stages of this analysis.

The court does, however, agree with some of Defendant's determinations that certain time entries should be subtracted from the total award. Invoice #73202 reflects an entry by Mr. Slicer for 1.40 hours related to Plaintiffs' own compliance with the Agreement and unrelated to their successful claim for the injection well. [ECF No. 138-1, at 21]. Additionally, invoice #77185 reflects three entries—two by Mr. Slicer totaling 4.2 hours and one by Ms. Morris, a paralegal, for 0.40 hours— related to Plaintiffs' request for a continuance. *Id.* at 53–54. This continuance, although for good cause, was prompted by the unavailability of two witnesses whose testimony related solely to Plaintiff's unsuccessful claims. *See* [ECF No. 90-1 (sealed motion)]. These entries are appropriately excluded.

The following table reflects the exclusions just discussed and provides the remaining hours for which Plaintiffs may seek reimbursement:

| Designation | Rate | Total Hours | Hours Cut | Net Hours | Fee |
|---|---|---|---|---|---|
| Senior Counsel | $500 | 313.4 | 85.6 | 227.8 | $113,900.00 |
| Associate | $300 | 10.0 | 0.0 | 10.0 | $3,000 |
| Associate | $200 | 7.4 | 0.0 | 7.4 | $1,480.00 |
| Paralegal/Clerk | $150 | 74.0 | 2.4 | 71.6 | $10,740 |
| **TOTAL** | | 404.8 | 88.0 | 317 | $129,120 |

### C. *Degree of Success*

"Finally, the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 244). As discussed, some of counsel's billing entries wholly involve unsuccessful claims unrelated to successful ones. Most entries, however, involve time "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Brodziak*, 145 F.3d at 197 (quoting *Hensley*, 461 U.S. at 435). "Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. In doing so, the court must avoid calculating an award "by means of a purely mathematical comparison between the number of claims pressed and the number prevailed upon." *Brodziak*, 145 F.3d at 197 (citing *Hensley*, 461 U.S. at 425 n.11). Accordingly, it is also appropriate at this stage to consider counsel's success on more granular issues throughout this litigation.

"Plaintiffs argue that having deducted the fees related to the unsuccessful claims, with the exception of the trial time attributable to those claims, the Court should award near 100% of the remaining time as Plaintiffs prevailed on the most significant and primary claim." [ECF No. 115, at 7]. Defendant makes the following argument in response:

> Because many time entries cannot be tied to a specific claim, the remaining sum should be reduced by at least 50% to account for time

that is attributable to both successful and unsuccessful claims. For instance, Plaintiffs attempt to recoup for nearly all of their time preparing for and attending trial. These amounts, however, should be reduced across the board because those entries necessarily include time attributable to unsuccessful claims. Fifty percent is also a reasonable reduction given that Plaintiffs recovered less than a third of what they originally sought, $300,000 . . . [and] prevailed on only a single category of damages—or less than a third of its original claims.

[ECF No. 141, at 3 (citing ECF No. 1, ¶ 2; ECF No. 110; ECF No. 117)].

The court also arrives at 50% as a reasonable reduction that accounts for several significant factors. Although Plaintiffs have already deducted fees exclusively affiliated with unsuccessful claims, awarding close to 100% of the remaining amount would encompass substantial time expended litigating those claims—which is inappropriate here where each claim involves distinct facts. *See Brodziak*, 145 F.3d at 197. As Defendant notes, Plaintiffs prevailed on approximately one-third of their claims and asserted damages. But, as Plaintiffs maintain, they succeeded on their "most significant and primary claim," which is why a reduction much greater than 50% would be inappropriate, particularly in light of counsel's plainly reasonable performance. The significance of Plaintiffs' successful claim, however, became apparent only with hindsight; Plaintiffs initially claimed certain damages, related to unsuccessful claims, that were reduced or eliminated throughout the proceedings. All three categories of damages were tried, so this is not a case where unsuccessful claims were largely disposed of early in the case before most work was performed. On their successful claim, Plaintiffs recovered most, but not all, of their asserted damages.

Plaintiffs also achieved limited success throughout this litigation. They filed briefing in opposition to Defendant's partial motion for summary judgment, litigating issues on which they ultimately conceded. Their concessions suggest the issues were always capable of extrajudicial resolution, however, they also demonstrate efficiency by avoiding further formal briefing. Defendant also argues that Plaintiffs created unnecessary delays by initially withholding their billing records, given that the court ultimately denied their motion to seal. The court acknowledges that Plaintiffs were concerned about revealing privileged information by disclosing the records in light of their pending appeal. But I note additional deficiencies in counsel's handling of the attorney fee issue, despite their reasonable performance overall. The evidentiary requirements for establishing a reasonable hourly rate are well established, yet Plaintiffs did not provide relevant affidavits until after prompted by Defendant. *Cf. Koontz*, 2013 WL 1337260, at *18 ("The Court also considered that a lower rate than requested was reasonable in light of Plaintiff's failure to include these peer affidavits with its motion and only offered his evidence after Defendant filed its response."). Plaintiffs also entirely failed to provide support for the rates requested for anyone other than Mr. Slicer. The court further observes that a few billing entries appear excessive. For example, counsel billed 7.20 hours for reading this court's order denying the motion to seal and preparing the billing records and accompanying explanation. [ECF No. 138-1, at 77]. But minimal explanation was provided, and the

record notations largely mirror those previously submitted with Plaintiffs' motion to seal. As stated, however, these deficiencies are isolated to the issue of attorney fees.

## IV. Conclusion

Plaintiffs' Motion for Attorney Fees [ECF No. 114] is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** to the extent that Plaintiffs are entitled to reasonable attorney's fees as well as costs. The Motion is **DENIED** as to the full amount requested. Based on the foregoing analysis, I find that **$64,560.00** represents a reasonable attorney fee for Plaintiffs' counsel. They are also entitled to **$2,750.44** in costs.[5]

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 31, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiffs' briefing states that they request $2,816.65 in costs, but that figure includes an expense of $66.21 that was expressly excluded as part of counsel's "cutting" decisions. *See* [ECF No. 138-1, at 40].

21